CAMARGO CORREA METAIS, S.A., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND AMERICAN ALLOYS, INC., GLOBE METALLURGICAL, INC., AMERICAN SILICON TECHNOLOGIES (FORMERLY SILICON METALTECH, INC.), AND SIMETCO, INC., DEFENDANT-INTERVENORS

Consolidated Court No. 91–09–00641

(Decided November 5, 1998)

*Rogers & Wells (William Silverman and Ryan Trainer)* for plaintiff Camargo Correa Metais, S.A.

*Law Offices of Royal Daniel, III (Royal Daniel, III and Jeri Beth Katz)* for plaintiffs Companhia Brasiliera Carbureto de Calcio, Rima Eletrometalurgica, S.A., and Ligas de Aluminio, S.A.

*Frank W Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Jeffrey Telep and Reginald T. Blades, Jr.);* of counsel: Rebecca Rejtman, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Baker & Botts (William D. Kramer, Charles M. Darling, IV, and Martin Schaefermeier)* for defendant-intervenors.

## OPINION

### BACKGROUND

MUSGRAVE, *Judge:* This case arises from an affirmative antidumping duty determination conducted by the U.S. Department of Commerce, International Trade Administration ("Commerce"), and published in the *Final Determination of Sales at Less Than Fair Value: Silicon Metal*

*from Brazil*, 56 Fed. Reg. 26,977 (1991) ("Final Determination"). Plaintiffs Camargo Correa Metais, S.A., Companhia Brasiliera Carbureto de Calcio ("CBCC"), Rima Eletrometalurgia, S.A., and Ligas De Aluminio S.A., Brazilian producers of silicon metals who export their product into the U.S. market, challenged the Final Determination in a consolidated action. *Camargo Correa Metais, S.A. v. United States, et al.*, 17 CIT 897 (1993) *("Camargo I")*. Following successive remand orders and determinations, the Court distilled the case to one issue and remanded that issue to Commerce for redetermination. *Camargo Correa Metais, S.A. v. United States, et al.*, 21 CIT 1249, Slip Op. 97–159 (November 25, 1997) *("Camargo II")*. Commerce's completed Final Results of Redetermination Pursuant to Court Remand are now before the Court.

## STANDARD OF REVIEW

In reviewing antidumping determinations, the Court "shall hold unlawful any determination, finding, or conclusion found * * * to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988).

## DISCUSSION

The lone remaining issue applies only to CBCC, against which company an antidumping duty order issued in the original Final Determination. In the Final Determination, Commerce concluded that certain value added taxes, called "ICMS" in the Brazilian system, paid on material inputs of CBCC's exported products were not remitted or refunded upon exportation, and therefore included ICMS values in calculating constructed value ("CV"). Final Determination at 26,984.

In *Camargo I*, CBCC challenged Commerce's treatment of ICMS. CBCC contended that its ICMS liability qualified as an internal tax remitted or refunded on export and should not be included in the CV determination. In the Brazilian system, ICMS paid is not directly remitted upon export but rather, by reason of the exportation, creates a credit for a company to use against further and future ICMS liability in its home market. CBCC received a substantial credit due to its export activity and argued that this constituted a remittance or refund. The Court agreed with this interpretation and with CBCC's argument that the constructed value provision requires the exclusion of remitted-on-export taxes such as the ICMS. *See Camargo I*, 17 CIT at 909–10.

The CV calculation is only part of the antidumping investigation, however. Once CV is established, it must be compared to the U.S. price ("USP") charged for the goods in question, and the difference between the two, after certain adjustments, sets the dumping margin. In this case, the fact that the USP provision required the inclusion in USP of any tax remitted or refunded by reason of export created a controversy. The constructed value provision then in effect, 19 U.S.C. § 1677b(e)(1)(A) (1988), required the exclusion from CV of remitted or refunded taxes, while the USP provision, 19 U.S.C. §1677a(d)(1)(C) (1988), required the increase of USP by the amount of the tax remitted

or refunded in the home market. "To include the amount of tax not collected by reason of export in the USP and exclude the same amount from constructed value results in a reduction of dumping duties of twice the amount of the tax. This is double counting." *Id*. at 910. The Court found that Commerce's inclusion of ICMS in CV was unsupported by substantial evidence and remanded the issue with instructions to consider the ICMS to be a remitted or refunded tax for purposes of the CV statute and to propose a method for avoiding the double counting problem. *Id*.

On remand, Commerce recalculated CBCC's CV figures exclusive of ICMS. Final Results of Redetermination Pursuant to Court Remand (December 13, 1993) ("1993 Final Remand Results"). The Court affirmed the 1993 Final Remand Results but did so without opinion. *Camargo Correa Metais, S.A. v. United States*, 18 CIT 330 (1994). Defendant-intervenors, the U.S. producers of silicon metal, appealed this Court's decision, and, because this Court affirmed without opinion, the Court of Appeals for the Federal Circuit ("CAFC") vacated the Court's Judgment for failure to state the findings of fact or conclusions of law upon which the Judgment was made, and remanded the case to this Court. *Camargo Correa Metais, S.A. v. United States*, 13 Fed. Cir. (T) 74, 52 F.3d 1040 (1995).

This Court was prepared to give its reasons for affirming the 1993 Final Remand Results, but Commerce changed its position on the ICMS issue after the remand from the CAFC. The 1993 Final Remand Results had excluded ICMS from CBCC's CV calculation. However, after the remand from the CAFC to this Court, Commerce sought a rehearing in which it sought to have its original methodology from the Final Determination, in which Commerce included ICMS in CV, reinstated. Commerce argued, contrary to the Court's ruling in *Camargo I*, that the ICMS is not remitted or refunded upon export. *Camargo II*, 21 CIT at 1259, Slip Op. 97–159 at 23–4. The Court again found that the ICMS is a tax remitted or refunded by reason of export and remanded the issue to Commerce with instructions to: "(1) consider the [ICMS] to be a rebate or remittance for purposes of the cited statutes, (2) propose a method to eliminate or account for the double counting problem, and (3) recalculate the dumping margin for plaintiff CBCC accordingly." *Id*. at 28.[1]

Commerce has completed and submitted its latest remand results and has now excluded ICMS from CV. Final Results of Redetermination Pursuant to Court Remand (March 25, 1998) ("1998 Final Remand Results"). Commerce, quoting extensively from *Camargo II*, now agrees with this Court's finding that the ICMS tax credit is the equivalent of a rebate or remittance for purposes of determining CV. The CV statute de-

---

[1] The Court affirmed Commerce's 1993 Final Remand Results "in all respects except the treatment of ICMS as to plaintiff CBCC." *Id*.

mands that such remittances or rebates be excluded from the CV calculation:

> [T]he constructed value of imported merchandise shall be the sum of—
>
>> (A) the cost of materials (exclusive of any internal tax applicable directly to such materials or their disposition, but remitted or refunded upon exportation of the article * * *).

19 U.S.C. § 1677b(e)(1)(A) (1988). Thus Commerce excludes CBCC's ICMS liability from its constructed value calculation. This result is consistent with Commerce's findings in its 1993 Final Remand Results and would have been affirmed accordingly in *Camargo II* but for Commerce's unsupportable change of position.[2] The Court finds that Commerce has complied with and satisfied the first remand instruction.

Commerce also argues that the USP statute itself provides a resolution for the double counting problem. Commerce's position takes into account both the uniqueness of the ICMS system[3] and the fact that the ICMS is a remittance or refund not collected by reason of export. The USP provision requires that USP be

> (1) increased by
>
>> (C) the amount of any taxes imposed in the country of exportation directly upon the exported merchandise or components thereof, which have been rebated, or which have not been collected, by reason of the exportation of the merchandise to the United States, but only to the extent that such taxes are added to or included in the price of such or similar merchandise when sold in the country of exportation.

19 U.S.C. § 1677a(d)(1)(C) (1988). The ICMS is not remitted, refunded or rebated at the moment of exportation; rather, it accrues as a credit that is then used to off-set other ICMS liabilities due on products and inputs purchases in the home market. Thus, ICMS taxes rebated by virtue of exportation are not "added to or included in the price of such or similar merchandise when sold in the country of exportation" as required for invoking the USP provision. "Where, as here, there is no tax paid by home market customers that is added to or included in CV, there is no statutory basis for increasing U.S. price." 1998 Final Remand Results at 6. While this may be a result applicable only to the unusual Brazilian system, it is yet a result that avoids the double counting problem. The Court finds that Commerce has complied with and satisfied the second remand instruction.

---

[2] The Court notes that Commerce's change in position may have been influenced by changes in the statutes wrought after the commencement of this case. In 1994, in between *Camargo I* and *II*, Congress altered the nomenclature used in antidumping investigations and focused adjustments exclusively on the foreign market value (for which constructed value was a surrogate), now referred to as "normal value," calculation. Recognizing the potential conflict in the previous statutes—precisely those controlling this case—Congress stated that the changes in the new statutes "expressly preclude[] the double-counting of adjustments." S. Rep. No. 412, 103rd Cong., 2nd Sess., at 70 (1994). However, Commerce was still bound by the previous statutory language.

[3] For a discussion on the Brazilian value added tax system, *see Camargo II* at 16–17, 23–28.

The Court again notes that this result was achieved by Commerce's 1993 Final Remand Results and would have been an effective avoidance of any conflict between the statutory provisions had Commerce not reversed itself in *Camargo II*. In the 1993 Final Remand Results, Commerce excluded from CV CBCC's ICMS taxes paid on material inputs, and correspondingly did not increase USP. Despite Commerce's advancement of a contrary position before this Court in *Camargo II*, the dumping margin calculation for CBCC from the 1993 Final Remand Results has gone unchanged. Commerce notes this in its 1998 Final Remand Results and states that no recalculation of CBCC's antidumping duty margin is required. 1998 Final Remand Results at 7. The Court agrees and finds that Commerce has complied with and satisfied all three of the remand instructions.

### CONCLUSION

For the foregoing reasons, the Court affirms the Department of Commerce's 1998 Final Results of Redetermination Pursuant to Court Remand.